UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                                  1:10-cr-268

JERRY ROBBINS, a/k/a JERRY ROBINS,
d/b/a FINISH LINE AUTO SALES, a/k/a
FINISH LINE AUTO,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Presently before the Court is the Government's Motion for Preliminary Order of Forfeiture, dkt. # 169, in this matter where a jury convicted Defendant Jerry Robbins of money laundering and failure to report certain cash transactions. The parties have briefed the issues.

## II.    **BACKGROUND**

The government charged Defendant Jerry Robbins in a twenty-six count indictment on September 15, 2010. See dkt. # 1. Generally, the government alleged that Defendant laundered money for drug dealers through his business, Finish Line Auto Sales. According to the government, Defendant sold automobiles to persons he knew to be drug dealers for cash, titled those vehicles in the names of third parties, and then failed to file currency reports mandated by federal law for cash transactions of more than $10,000. Such practices, the government alleges, were a means by which persons engaged in illegal drug

sales could dispose of the cash from those sales and make the money appear to come from a legitimate source.

Count 1 of the indictment charged Defendant with conspiracy to engage in money laundering. Count 2 alleged money laundering in a sale to an undercover officer. Counts 3 through 9 charged money laundering with respect to specific transactions. The indictment listed a particular vehicle, purchase price, and date of transaction, but alleged that the criminal conduct was of the same type for each transaction. Counts 10 through 16 charged defendant with engaging in monetary transactions within the United States involving property valued greater than $10,000 which was derived from a specified unlawful activity. The government also charged Defendant with aiding and abetting on Counts 3 through 16. Counts 17 through 25 charged Defendant with violating certain laws related to reporting cash transactions over $10,000. Each of those counts referenced specific transactions. Count 26 charged the defendant with violating laws prohibiting the destruction of property subject to seizure.

After a trial, the jury returned a verdict of guilty against Defendant on Counts 3, 7, 8, 17, 19, 24 and 25. The jury acquitted the Defendant on all other Counts. Defendant then filed a motion for acquittal, which the Court denied. The government thereafter filed the instant forfeiture motion, arguing that Defendant's convictions for money laundering on Counts 3, 7, and 8 require that result. The government seeks a money judgment in the amount of $70,275 and forfeiture of the premises and real property at 2399 Bailey Avenue, Buffalo New York. The government contends that the money judgment reflects the value of the vehicles involved in the illegal transactions and that the real property was used to

facilitate the money-laundering crime. The parties have briefed the issue, bringing the case to its present posture.

## II.     LEGAL STANDARD FOR FORFEITURE

Federal Rule of Criminal Procedure 32.2(b)(1)(A) provides that "[a]s soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." FED. R. CRIM. P. 32.2(b)(1)(A). When "the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Id. When the forfeiture sought is "a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." Id. If possible, the Court is to issue a preliminary order of forfeiture "in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant[.]" FED. R. CRIM. P. 32.2(b)(2)(B).

"Criminal forfeiture under section 982 is a form of punishment, separate and apart from any restitutive measures imposed during sentencing." United States v. Peters, 732 F.3d 93, 98 (2d Cir. 2013). "Criminal forfeiture focuses on the disgorgement by a defendant of his 'ill-gotten gains.'" United States v. Contorinis, 692 F.3d 136, 146 (2d Cir. 2012)(quoting United States v. Kalish, 626 F.3d 165, 170 (2d Cir. 2010)). Under the relevant statute, "[f]orfeiture of money[,] . . . unlike restitution, 'constitutes punishment,' because the statute directs the court to order it 'as an additional sanction when imposing sentence on the person convicted of the relevant offense' and because '[criminal forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners.'"

Id. (quoting United States v. Bajakajian, 524 U.S. 321, 328 (1998)).  In determining how to impose forfeiture, the Court must first decide which "'property is subject to forfeiture under the applicable statute'"; the Court's conclusion "'may be based on evidence already in the record, including any written plea agreement or, if the forfeiture is contested, on evidence or information presented by the parties at a hearing after the verdict or finding of guilt.'" United States v. Capoccia, 503 F.3d 103, 109 (2d Cir. 2007) (quoting Fed. R. Crim P. 32.2(b)(1)). The evidence considered by the Court, therefore, may be evidence produced at trial.  Id. "The calculation of forfeiture amounts is not an exact science."  United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011).  A "court 'need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information.'"  Id. (quoting United States v. Sabhnani, 599 F.3d 215, 261 (2d Cir. 2010)).  The Court may "use general points of reference as a starting point for calculating the losses or gains from fraudulent transactions and may make reasonable extrapolations from the evidence established by preponderance . . . at the sentencing hearing."  Id.

Since criminal forfeiture "is part of the process of criminal sentencing" and "[f]act-finding at sentencing is made by a preponderance of the evidence" criminal forfeiture generally "depends on the preponderance of the evidence."  United States v. Bellomo, 176 F.3d 580, 595 (2d Cir. 1999); see also United States v. Gaskin, 364 F.3d 438, 462 (2d Cir. 2004).

**III.    ANALYSIS**

Defendant was convicted, inter alia, on Counts 3, 7 and 8 of the indictment. All of those counts relate to money laundering and conspiracy to launder money that was the proceeds of drug trafficking.  The indictment alleges that Defendant

> did knowingly conduct, and attempt to conduct, financial transactions, namely, the transfer, delivery and disposition of monetary instruments, namely, United States currency, and the transfer of title to vehicles . . . which financial transactions affected interstate commerce, and which involved the proceeds of specified unlawful activity, namely, the distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to do so, in violation of Title 21, United States Code, Section 846, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and to avoid a transaction reporting requirement under Federal law, namely, the transaction reporting requirements as set forth in Title 31, United States Code, Section 5331(a), and the regulations promulgated thereunder, including Title 31, Code of Federal Regulations, Section 103.30, and knowing that the property involved in such financial transactions, namely, the said United States currency, represented the proceeds of some form of unlawful activity.

See dkt. # 1.  The indictment charged that such activity violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).  Count 3 concerned the sale of a 2001 GMC Yukon for $25,000 on February 27, 2006.  Count 7 alleged the sale of a 2002 Chevrolet Suburban for $10,820 on April 27, 2007.  Count 8 concerned the sale of a 2004 Infiniti QX 56 for $34,455 on June 9, 2007.

Here, the applicable criminal forfeiture statute, 18 U.S.C. § 982, provides in relevant part that "(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title [18 U.S.C. § 1956, 1957 or 1960], shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 1982(a)(1).  The statute therefore requires the Court to order forfeiture of any real or personal property either "involved in" or "traceable to" the offense.  See, e.g., United States v. Monsanto, 491 U.S. 600, 607 (1989) (finding that language mandating that "a sentencing court 'shall order' forfeiture of *all* property" created a mandatory obligation on the Court to order forfeiture of eligible property.") (emphasis in original).

The government argues that the evidence introduced at trial permitted the jury to find Defendant guilty beyond a reasonable doubt of laundering the money involved in the three transactions alleged in Counts 3, 7 and 8.  The government therefore seeks forfeiture of the $25,000 which were the proceeds of the sale of the 2001 GMC Yukon on February 27, 2006, the $10,820 which were the proceeds of the sale of the 2002 Chevrolet Suburban on April 27, 2007, and the $34,455 which were the proceeds of the sale of a 2004 Infiniti QX 56 on June 9, 2007.   These are funds, the government contends, which were involved in and/or traceable to the money laundering offense.  The government also seeks forfeiture of the premises and real property at 2399 Bailey Avenue, Buffalo, New York, which was the site of the car dealership where Defendant conducted the money laundering operations.  The government argues that the dealership was central to and facilitated the underlying money laundering scheme.  Defendant responds to these arguments by contending that forfeiture is not mandatory in this situation, that he cannot be subjected to *in personam* forfeiture, and that in any case the forfeiture sought by the government is an excessive fine that violates the Eighth Amendment.  Defendant also argues that government miscalculates the amount involved in one of the transactions.  Defendant does not address any arguments to the sufficiency of the evidence cited by the government to support forfeiture.

The Court rejects Defendant's argument that he cannot be subject to a money judgment against him as a result of his conviction.  Defendant's argument is that "one of the statutes under which the government proceeds here, 18 U.S.C. § 981, and upon which most of the cases cited by the government relies, only entitles the government to civil, *in rem*, forfeiture."  (Defendant's Brief, dkt. # 174, at 7-8).  Because, Defendant insists, that statute

does not permit a money judgment against him, the government's forfeiture motion must be rejected in that respect.

It is clear to the Court that the government seeks criminal forfeiture pursuant to 18 U.S.C. § 982. The indictment in this case contained a forfeiture allegation that sought to have Defendant "forfeit to the United States all property involved in the offenses of conviction, and any property traceable to said property, including but not limited to" more than $500,000 in United States currency and the premises at 2339 Bailey Avenue that are the subject of the instant motion. See Indictment, dkt. # 1. The government sought that forfeiture pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(p). Id. Thus, whatever the merits of Defendant's argument concerning 18 U.S.C. § 981, the relevant statute here is 18 U.S.C. § 982. Under that statute, a money judgment is completely appropriate, since the judgment is designed as punishment "separate and apart from any resitutive measures imposed during sentencing." Peters, 732 F. 3d at 98. Indeed, as the Fourth Circuit has stated, "Section 982 provides a *criminal* (in personam) forfeiture remedy against defendants convicted of certain offense" while Section "981 provides for *civil* (in rem) forfeiture of property involved in certain offenses." United States v. Cherry, 330 F.3d 658, 669 n.16 (4th Cir. 2005). Civil forfeiture proceedings are brought against the property, while criminal forfeiture proceedings are brought against the property owner. Id. Since the government seeks criminal forfeiture as part of the criminal conviction under one of the statutes covered by 18 U.S.C. § 982(a)(1), a money judgment against the Defendant is completely appropriate as a criminal forfeiture.

Defendant is correct, however, that the Court must consider whether the criminal forfeiture the government seeks to impose against the Defendant is excessive: "[a] court's

discretion in ordering criminal forfeiture is cabined by the Eighth Amendment's Excessive Fines Clause." Peters, 732 F.3d at 99. "The amount of forfeiture 'must bear some relationship to the gravity of the offense that it is designed to punish.'" Id. (quoting Bajakajian, 524 U.S. at 334). Thus, "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense." Bajakajian, 524 U.S. at 334. The Second Circuit Court of Appeals has identified four factors for determining whether forfeiture is proportional to the offense:

> (1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct.

United States v. George, 779 F.3d 113, 122 (2d Cir. 2015) (quoting United States v. Castello, 611 F.3d 116, 120 (2d Cir. 2010)).[1]

Defendant argues that the forfeiture sought by the government is disproportionate on several grounds. First, the Defendant contends that the government misstates the sale

---

[1] Defendant's brief identifies a number of factors to consider in determining the proportionality of the fine. Defendant does not cite to any precedent from the Second Circuit, however. Instead, Defendant cites to United States v. Van Brocklin, 115 F.3d 587, 601-602 (8th Cir. 1997) and United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993), for a test that examines, in part "the seriousness of the offense, an assessment of the personal benefit reaped by the particular defendant; the defendant's motive and culpability; and the extent that the defendant's interest and enterprise itself are tainted by criminal conduct." (Defendant's Brief at 5). The Court notes that Van Brocklin was withdrawn by the Eighth Circuit and that Sarbello, a Third Circuit case, addressed forfeiture in the context of a RICO enterprise. Sarbello also appeared before the Supreme Court discussed proportionality in Bajakajian. Even if relevant, those cases would have only persuasive authority in this Court. Since the precedent stated by the Second Circuit is binding on this Court and the factors stated in Castello were derived from the opinion of the United States Supreme Court in Bajakajian, the Court will apply those factors in this case.

price of the vehicle in Count 7 by $1,600.[2]  Defendant does not, however, appear otherwise to dispute that he must forfeit the amount paid for the cars implicated in the three transactions for which he was convicted.

Instead, Defendant focuses his argument on the forfeiture of the premises and real property involved in the money laundering offenses.  He asserts that such forfeiture is disproportionate.  He contends that the "seriousness of the offense is minimal" because he and his wife built their business over a number of years, beginning with cars purchased, cleaned and repaired and sold out of their home and growing into a business with "'floor plan' credit, a car lot, and an inspection and repair facility."  (Defendant's Brief at 6).  Defendant only made money on one of the three cars involved in the illegal transactions.  (Id.). Moreover, the government did not demonstrate that Defendant used the proceeds of the transaction for any unlawful purpose.  (Id. at 6-7).  The government, Defendant contends, also failed to demonstrate that he played a role in a larger conspiracy or had a broad motive to facilitate any larger criminal enterprise: instead, Defendant "was a businessman serving a genuine need of his inner-city community–and nothing more."  (Id. at 7).  Indeed, Defendant

---

[2] Defendant argues that the "DMV MV50 form" filed for that vehicle showed a purchase price of $8900. (Defendant's Brief at 4-5). Trial testimony from Jerome Davis, who supplied the cash for the vehicle, indicated he paid $10,500 for the car, and used drug money for the purchase. (Id.). Defendant argues "to settle on the $10,500 figure would require us to accept the government's witness as to the amount of the purchase, but to deny the same government witness' testimony as to the source of the money." The Court has already concluded that sufficient evidence supported Defendant's conviction on this Count. See dkt. # 173. As Defendant admits, Jerome Davis testified that he paid $10,500 plus fees for the car, whatever the amount the paperwork that Defendant filed for the transaction represented. See Dkt. # 173 at 9 (and the citations to the record therein). The Court finds that a preponderance of the evidence indicates that Davis paid $10,500 plus fees for the car and forfeiture should be in the amount sought by the government.

argues, to seize his entire dealership, where he sold more than 2,000 cars, because of three illegal sales, is grossly disproportionate to the nature of his offense.

Since the Defendant apparently does not dispute that the sale price of the three vehicles involved in the money laundering transactions for which he was convicted should be forfeited, the real question here concerns the forfeiture of the premises where these illegal transactions occurred. The Court notes that Defendant does not argue that those premises were not "involved in" the transaction, and thus subject to forfeiture under 18 U.S.C. § 982(a)(1). He could not, since the evidence at trial indicated that the illegal transactions took place at that property. Since the nature of the money laundering scheme found by the jury involved the sale of automobiles as a means of covering up the source of the funds used for those purchases, the car dealership played a central role in the illegal scheme and is subject to forfeiture under the statute. Thus, the question before the Court is whether forfeiture of the premises where the illegal scheme took place represents an excessive fine under the Eight Amendment. To do so, the Court must apply the four factors explained above.[3]

As to the first factor, the essence of the crime of the defendant and its relation to other criminal activity, the Court finds that forfeiture of the dealership is proportionate under this factor. The statute of conviction is designed to prevent the laundering of money involved in another illegal activity, in this case drug trafficking. The Defendant's crime here was using his auto dealership to allow drug traffickers to legitimize the funds they received from illegal narcotics sales. The money laundering could not have occurred without Defendant's business, and the business was therefore an integral part of the larger criminal activity.

---

[3]The Court notes that it would have been helpful for the Court if the parties had identified the proper factors and analyzed them.

Defendant's criminal activity was not a simple mistake or oversight, but instead facilitated a larger and more nefarious enterprise. See, e.g., Castello, 611 F.3d at 121-122 (finding that analysis of the first factor favored "full forfeiture" since defendant had repeatedly failed to file transaction reports and did so in a way that "enabled his customers to commit various acts of fraud," unlike the Defendant in Bajakajian, who "committed a single offense, once, for a purpose that was not nefarious.")

As to the second factor, whether the defendant fits into the class of persons for whom the statute was principally designed, the Defendant clearly fits into this class. The jury found that Defendant had knowingly involved himself in money laundering transactions on three occasions. The statute under which the jury convicted Defendant, Section 1956 of Title 18, United States Code, deals with participation in a financial transaction that involves property constituting the proceeds of specified unlawful activity. Section 1956(a)(1)(B) provides that:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity–
>
> (B) knowing that the transaction is designed in whole or in part-
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
> (ii) to avoid a transaction reporting requirement under State or Federal law
> [is guilty of a crime].

18 U.S.C. 1956(a)(1)(B). Defendant was certainly a person who engaged in financial transactions involving automobiles, and the jury clearly found he was a person involved in "the knowing and intentional transportation or transfer of monetary proceeds from specified

unlawful activities." Whifield v. United States, 543 U.S. 209, 212 (2005).  Thus, Defendant "was the kind of person to whom the statute is directed," and this factor weighs in favor of full forfeiture.  Castello, 611 F.3d at 122.

As to the third factor, the maximum sentence and fine that could have been imposed, the statute of conviction imposes a penalty of "a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment of not more than twenty years, or both."  18 U.S.C. § 1956(a)(1).  The government has provided the Court with information indicating that the total value of the land and property where Defendant's dealership is located in $82,800.00.  See dkt. # 169-1.  The forfeiture sought here clearly is less than the maximum potential sentence, especially because the Defendant does not dispute that the car dealership was involved in the crimes for which he was convicted.   This forfeiture is more than the value of the vehicles sold as part of the money laundering transactions, but not to an excessive degree.  Moreover, the total value of the forfeiture, $153,075.00, is nowhere near the maximum fine under the statute of conviction. The Court notes that the Court of Appeals has found that "[s]tatutory penalties reflect severity in a general way, but the applicable Guidelines are more indicative." Castello, 611 F.3d at 122.  Castello dealt with a different crime, however:  failing to file currency transaction reports in violation of 31 U.S.C. § 5313(a).  That statute lacks the same connection between the fine imposed and the property involved in the transaction as the statute involved here.  See Castello, 611 F.3d at 122 and 31 U.S.C. § 5322(a) (setting penalty at a fine of "not more than $250,000" five years in prison, "or both.").  Given the nature of the statutory penalties and the fact that the penalty here does not even approach

the statutory maximum, the Court finds that forfeiture of the dealership is fully proportionate under this factor as well.

Finally, with respect to the fourth factor, the nature of the harm caused by the defendant's conduct, the Court finds that this factor favors forfeiture of the dealership as well. Here, Defendant argues that the illegal transactions involved in money laundering represented only one percent of his business and seizing the entire dealership would be disproportionate to the relationship of the money laundering to his entire business. In other words, the harm caused by the few illegal transactions in which he was involved does not outweigh the ordinary business he did at that location. The Court disagrees, as the harm caused by using his business to facilitate the operation of a drug enterprise outweighs the legal business Defendant operated. The Jury found, and the evidence introduced at trial indicated, that Defendant was not simply a businessman who happened to occasionally sell a car to someone who by chance turned out to be a drug dealer. Instead, the evidence indicates that Defendant knowingly participated in transactions that allowed drug dealers to operate their businesses. This conduct was the sort of harm that the money laundering statute was designed to prevent. Forfeiture of the business that facilitated the harm is "not a case in which the harshness of the forfeiture so exceeds the gravity of the offense of conviction as to indicate gross disproportionality violative of the Constitution." George, 779 F.3d at 124.

## IV.     CONCLUSION

For the reasons stated above, the Government's motion for a preliminary order of forfeiture, dkt. # 169, will be GRANTED. The court orders that:

1. All of Defendant's right, title and interest in the premises and real property at 2399 Bailey Avenue, Buffalo, New York is hereby FORFEITED to the United States as property that was involved in the money laundering offenses for which the Defendant was convicted in Counts 3, 7 and 8 of the indictment; and

2. A money judgment in the amount of $70,275.00 is hereby entered against the Defendant and that sum is hereby FORFEITED to the United States as funds arising from the money laundering proceeds involved in Counts 3, 7 and 8 of the indictment.

IT IS SO ORDERED.

DATED:  May 6 , 2015.

_____
Thomas J. McAvoy
Senior, U.S. District Judge